# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JASON ANDREWJESKI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 18-2425-KHV** |
| **BIMBO FOODS BAKERIES DISTRIBUTION, LLC,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Jason Andrewjeski brings suit against Bimbo Foods Bakeries Distribution, LLC ("Bimbo Foods"), Bimbo Bakeries USA, Inc. ("Bimbo Bakeries"), Teamsters Local 955 ("Teamsters" or "Union") and John Does 1-5, asserting various state law claims arising from the alleged conversion and interference with his exclusive right to sell and distribute certain fresh-baked products in the Greater Kansas City Metropolitan Area. This matter comes before the Court on <u>Defendant International Brotherhood Of Teamsters Local Union No. 955 Motion To Dismiss</u> (Doc. #7) filed September 13, 2018 and <u>Defendant Bimbo Bakeries U.S.A., Inc. And Bimbo Foods Bakeries Distribution LLC's Motion To Compel Arbitration And Dismiss Or Stay Proceedings Pending Arbitration, Or In The Alternative To Dismiss Plaintiff's Complaint</u> (Doc. #15) filed November 29, 2018.[1] For reasons stated below, the Court overrules both motions.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as

---

[1]    Pursuant to an agreement with plaintiff, the Bimbo defendants have withdrawn their request to compel arbitration and dismiss or stay proceedings pending arbitration. <u>See</u> <u>Stipulation Regarding Withdrawal Of Motion To Compel Arbitration</u> (Doc.#23) filed January 24, 2019.  As discussed below, they also seek to dismiss plaintiff's claims on other grounds.

true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Cty. of Allegheny, 515 F.3d 225, 232-33 (3d Cir. 2008)).

## Factual Assertions

Highly summarized, plaintiff alleges the following facts.

Bimbo Foods is a Delaware limited liability company with its principal place of business located at 255 Business Center Dr., Horsham, Pennsylvania, 19044. At all relevant times, it did and continues to do substantial business activity in the State of Kansas. Complaint (Doc. #2) filed August 16, 2018 ¶ 2.

Bimbo Bakeries is a Delaware limited liability company with its principal place of business located at 255 Business Center Dr., Horsham, Pennsylvania, 19044. At all relevant times, it did and continues to do substantial business activity in the State of Missouri. Id. ¶ 4.

Teamsters is a Missouri labor organization with its principal place of business in Jackson County, Missouri. Id. ¶ 5.

Bimbo Foods, Bimbo Bakeries and their predecessors (collectively, "BIMBO") sold individuals and small businesses the exclusive right to sell and distribute certain bakery products throughout the United States, including the Greater Kansas City Area. Id. ¶¶ 10-11. Specifically, BIMBO's business model for product distribution involved the formation and operation of an "Independent Operator (IO) Distribution Network" in which BIMBO sold independent distributors the exclusive right to purchase, resell and distribute its bakery products. Id. ¶ 12. BIMBO facilitated this paradigm by establishing a network of independent distributors who each executed an individual "Bill of Sale" to purchase, in fee simple, distribution rights and other assets. Id. ¶ 13. This sale included (1) the route, complete with customer lists, customer data, networked computer equipment and advertising and marketing rights, and (2) bakery products for resale. Id.

Plaintiff executed a Bill of Sale to purchase from BIMBO a specified route in a certain sales

area in the Greater Kansas City Metropolitan Area.[2]  Id. ¶ 16.  The bill of sale states, in part, as follows:

> In consideration of the sum of . . . paid by PURCHASER to SELLER, SELLER hereby sells, transfers, conveys, assigns and delivers to PURCHASER, and PURCHASER hereby purchases, accepts, assumes and receives from SELLER, all of SELLER'S right, title and interest in and to the following assets, properties, rights and interests (collectively the "ASSETS"):  (a) the Distribution Rights to sell and distribute Products manufactured and/or distributed by BIMBO FOOD BAKERIES DISTRIBUTION Inc. . . . to Outlets in the geographic territory described on Schedule A . . . to have and to hold the same, with the appurtenances thereof, unto the PURCHASERS, his successors and assigns, forever, to his own proper use and behalf.

Complaint ¶ 15 (emphasis omitted).   Under the agreement, plaintiff's exclusive distribution rights were to continue until such time as plaintiff voluntarily sold or transferred such rights.  Id. ¶ 56.

Plaintiff has not sold or transferred his distribution rights.  Id.  BIMBO can terminate the agreement only "for cause."  Id. ¶ 57.

Plaintiff financed the purchase through a secured loan from BIMBO or a company affiliated with BIMBO.  Id. ¶¶ 17-18.  To obtain financing, plaintiff executed a security agreement which stated, in part, as follows:

> Distributor hereby mortgages, charges and assigns to the Secured Party and grants to the Secured Party a Security Interest in all his right, title and interest in and to, (i) The Distribution Rights granted to Distributor by the Secured Party pursuant to a certain Bill of Sale . . . [sic] together with the route book, customer data, and other assets used by the Distributor in the operation of his business; (ii) a certain Norand Handheld Computer and a certain Norand Van Mounted Pritner; [sic] (iii) all equipment, inventory, accounts, goods, property, contract rights, chattel paper, accounts receivable and general intangibles relating to or arising from Distributor's business.  * * *

Id. ¶ 19.

---

[2]         The complaint does not state when plaintiff executed the bill of sale.  The record does not contain a copy of the document.

BIMBO facilitated its IO Distributor Network distribution model by entering into Distribution Agreements with route owners.  Id. ¶ 21.  The Distribution Agreements set forth the obligations of BIMBO and the Independent Operators ("IOs"), respectively, to work together and to enhance and benefit the successful operation of the IO businesses to sell and deliver baked goods, including but not limited to BIMBO products.  Id. ¶ 23.

To facilitate sales and distribution of its products, BIMBO retained Distribution Consultants, Inc. ("DCI") to assist with developing and implementing the IO Distribution Network.  Id. ¶ 25.  DCI aimed to lower distribution costs and increase profits by replacing employee-based models with independent, owner-operated distribution systems.  Id. ¶ 26.

On September 12, 2005, plaintiff and Bimbo Bakeries Distribution Company, LTD ("BBDC"), a Texas limited partnership, executed a Distribution Agreement – under which BBDC agreed to assist plaintiff in increasing the number of outlets and products in his sales area.  See id. ¶¶ 75-76 and Exhibit A thereto.  The Distribution Agreement has a term of ten years with an automatic renewal for another ten years.  Id. ¶ 79.  It does not allow BBDC to terminate plaintiff's rights without cause and proper notice.  Id.

Under the Distribution Agreement, the parties agreed to purchase and supply sufficient quantities of products to adequately supply outlets in plaintiff's sales area.  See Distribution Agreement § 3.2, Exhibit A to Complaint (Doc. #2).  Plaintiff agreed to use his best efforts to develop and maximize sales of products to outlets within the sales area.  Id. § 4.1.  BBDC agreed to use commercially reasonable efforts to deliver sufficient quantities of products to supply outlets, assist in the development of new supply outlets, preserve the quality and marketability of products, and assist and cooperate with plaintiff's sales efforts.  Id. § 5.1.  The parties agreed that under the

Distribution Agreement, plaintiff may gain access to confidential information, i.e. trade secrets. Specifically, the Distribution Agreement states as follows:

> As a result of this Agreement, DISTRIBUTOR may have access to or obtain certain information not available to the general public regarding BBDC's or its affiliates' business ("Confidential Information"). DISTRIBUTOR acknowledges that the Confidential Information constitutes valuable trade secrets to BBDC and DISTRIBUTOR agrees that it must use the Confidential Information solely in accordance with the provisions of this Agreement and will not disclose, or permit to be disclosed, the same directly or indirectly, to any third party without BBDC's prior written consent. * * *

Id. § 6.1.

In 2011, BIMBO's parent company, Mexico-based "Grupo Bimbo, S.A.B. de C.V.," purchased Sara Lee Corporation's North American fresh bakery business, which resulted in overlapping distribution routes with BIMBO's existing IO distribution network. Id. ¶ 28. The Sara Lee distribution model relied on union employee drivers. Id. ¶ 29.

On December 31, 2014, Bimbo Foods acquired all of the rights and liabilities of Bimbo Bakeries Distribution Company, LLC, a Texas limited liability company which had previously operated as BBDC. Id. ¶ 3.

In 2017, BIMBO negotiated for the drivers of Teamsters to take over the routes owned by plaintiff and other independent route owners in the Kansas City Area. Id. ¶ 31. Teamsters knew that BIMBO had not properly acquired the distribution rights from the independent distributors. Id. ¶ 32. On October 23, 2017, counsel for plaintiff informed Teamsters that plaintiff owned the exclusive right to distribute BIMBO products in certain geographic areas and that any action by the union to service the routes owned by plaintiff would interfere with his business expectancy. Id. ¶ 33. Although BIMBO has not acquired plaintiff's exclusive right to distribute BIMBO products, BIMBO and Teamsters have nevertheless taken over operation of plaintiff's route. Id. ¶ 39.

BIMBO has disclosed to Teamsters confidential information regarding customer data and customer lists for the sale of baked goods to outlets in plaintiff's exclusive sales area. Id. ¶ 99.

## Analysis

Against all defendants, plaintiff asserts claims for conversion (Count I), tortious interference with a business expectancy (Count IV), tortious interference with business relations (Count V), and civil conspiracy (Count XI). Against Teamsters, plaintiff asserts additional claims for tortious interference with a business expectancy (Count VI) and tortious interference with business relations (Count VII). Against Bimbo Foods, Bimbo Bakeries and Does 1-5, plaintiff also asserts claims for constructive trust (Count II), unjust enrichment (Count III), and violation of the Kansas Uniform Trade Secrets Act ("KUTSA"), K.S.A. § 60-3320 et seq. (Count VIII). Against Bimbo Foods and Bimbo Bakeries, plaintiff also asserts claims for specific performance (Count IX) and breach of distribution agreement (Count X). Teamsters and BIMBO seek to dismiss the claims against them.

## I.     Teamsters' Motion To Dismiss

Against Teamsters, plaintiff asserts claims for conversion (Count I), tortious interference with a business expectancy (Counts IV and VI), and tortious interference with business relations (Counts V and VII). Teamsters seeks to dismiss on grounds that (1) federal law preempts the claims; and (2) plaintiff has failed to state plausible claims for relief.

### A.     Federal Preemption

Teamsters asserts that federal law preempts the claims. Teamsters asserts that in essence, plaintiff claims that the collective bargaining agreement between it and BIMBO constitutes an unfair labor practice under Section 8(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §

158(e).[3]  See Defendant International Brotherhood Of Teamsters Local Union No. 955 Memorandum In Support Of Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted (Doc. #8) filed September 13, 2018 at 6-7.  In a case involving similar claims against the same defendant in this Court, Chief Judge Julie A. Robinson rejected this argument.  See Butcher v. Teamsters Local 955, No. 18-2424-JAR-KGG, 2018 WL 6200027, at *5-8 (D. Kan. Nov. 11, 2018).  Specifically, Judge Robinson found that adjudicating plaintiff's claims would not interfere with the "integrated scheme of regulation" established by the NLRA or the underlying purpose of federal preemption in the labor context, i.e. limiting state authority over labor disputes. See id. at *8 (quoting Chamber of Commerce of U.S. v. Brown, 554 U.S. 60, 65 (2008) (quoting Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608, 613 (1986)).  The Court agrees with Judge Robinson's analysis and will not dismiss plaintiff's claims on this ground.

**B.      Claims For Relief**

Teamsters asserts that plaintiff has failed to state plausible claims for relief.  Specifically, Teamsters asserts that plaintiff has failed to allege facts sufficient to support claims of conversion (Count I), tortious interference with a business expectancy (Counts IV and VI), tortious interference

---

[3]      Section 8(e) states, in relevant part, as follows:

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void[.] * * *

29 U.S.C. § 158(e).

with business relations (Counts V and VII), and civil conspiracy (Count XI).[4]  See Teamsters Memorandum (Doc. #8) at 7-13.

### 1. Conversion (Count I)

Plaintiff alleges that with full knowledge of his exclusive distribution rights, Teamsters entered into an agreement with BIMBO for its drivers to take over the distribution of BIMBO products in plaintiff's route.  Complaint (Doc. #2) at 9-12, 26-27.  Plaintiff asserts that by agreeing with BIMBO to convert his distribution rights – and by providing drivers to do so – Teamsters conspired with BIMBO to convert his property and actively participated in converting his property.  Id. at 27.

Under Kansas law, "conversion is the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights."  Bomhoff v. Nelnet Loan Servs., Inc., 279 Kan. 415, 421, 109 P.3d 1241, 1246 (2005).  To state a claim for conversion, plaintiff must allege that (1) he possessed a right in the goods or personal chattels; and (2) defendant exercised control over the goods or chattel to the exclusion of his right.  See In re Bratt, 491 B.R. 572, 578 (Bankr. D. Kan. 2013); Bank v. Parish, 46 Kan. App.2d 422, 433, 264 P.3d 491, 498 (2011).  So long as a present property right exists, intangible property rights may be subject to conversion.  See Butcher, 2018 WL 6200027, at *8 (citing Near v. Crivello, 673 F. Supp. 2d 1265, 1281 (D. Kan. 2009) (further citations omitted).

Teamsters asserts that plaintiff has not shown that the sales representatives and/or sales professionals working in his route are agents of the Union.  See Teamsters Memorandum (Doc. #8)

---

[4]  Teamsters also asserts that plaintiff's allegations are conclusory.  See Teamsters Memorandum (Doc. #8) at 7-9.  As discussed below, plaintiff alleges sufficient facts to state plausible claims for relief.

at 10.  Teamsters asserts that such individuals are agents of BIMBO, not the Union, and that the Union has not acquired possession, ownership, or control of the plaintiff's distribution route.  <u>See</u> <u>id.</u> at 10-11.  In <u>Butcher</u>, Judge Robinson rejected similar arguments.  Specifically, Judge Robinson found that plaintiffs had sufficiently alleged that Teamsters instigated and authorized a plan which resulted in the conversion of plaintiffs' property,  and whether union members acted as agents of the Union constitutes a question of fact.  <u>See</u> <u>Butcher</u>, 2018 WL 6200027, at *8.  The same analysis applies here.  The Court overrules defendant's motion on this ground.

### 2. Tortious Interference With Business Expectancy (Counts IV And VI)

Plaintiff asserts that Teamsters tortiously interfered with his business expectancies regarding sales to customers in his service area (Count VI) and his contractual relationship with BIMBO (Count VI).  To state a claim for tortious interference with a business expectancy, plaintiff must allege (1) the existence of a business relationship or expectancy with the probability of future economic benefit to plaintiff; (2) that defendant had knowledge of the business relationship or expectancy; (3) that, except for the conduct of defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) that plaintiff suffered damages as a direct or proximate cause of defendant's misconduct.  <u>See</u> <u>Burcham v. Unison Bankcorp, Inc.</u>, 276 Kan. 393, 424, 77 P.3d 130, 151 (2003).  The claim is predicated on malicious conduct and aimed at protecting future or potential contractual relations.  <u>See</u> <u>id.</u>, 276 Kan. at 424-25, 77 P.3d at 151.

Teamsters asserts that plaintiff has not alleged facts sufficient to establish the fourth element, <u>i.e.</u> that it had engaged in intentional misconduct.  Specifically, Teamsters asserts that plaintiff has not alleged facts which support that it engaged in intentional and malicious conduct.  <u>See</u> <u>Teamsters</u>

Memorandum (Doc. #8) at 12. In <u>Butcher</u>, Judge Robinson rejected the same argument. Specifically, Judge Robinson found that although malice is not an explicit element of the claim, it is an implied element of the intentional misconduct requirement. See <u>Butcher</u>, 2018 WL 6200027, at *9. Judge Robinson found that the issue is typically one for the jury, and that plaintiffs had plausibly alleged that Teamsters maliciously interfered with their exclusive distribution rights. <u>See id.</u> The same analysis applies here. Plaintiff asserts that with full knowledge of his exclusive distribution rights, Teamsters conspired with BIMBO to have union drivers take over plaintiff's routes. On this record, plaintiff has sufficiently alleged that Teamsters engaged in intentional misconduct. The Court overrules defendant's motion on this ground.

### 3. Tortious Interference With Business Relations (Counts V And VII)

Plaintiff asserts that Teamsters tortiously interfered with his business relations and/or agreements with customers in his service area (Count V) and with his business relations and/or agreements with BIMBO (Count VII). To state a claim for tortious interference with business relations, plaintiff must allege (1) the existence of a contract or business relationship; (2) defendant's knowledge thereof; (3) defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. See <u>Cohen v. Battaglia</u>, 296 Kan. 542, 546, 293 P.3d 752, 755 (2013); <u>Burcham</u>, 276 Kan. at 423, 77 P.3d at 150. Similar to tortious interference with a business expectancy, the claim is predicated on malicious conduct but aimed at protecting existing contractual relations. See <u>Burcham</u>, 276 Kan. at 424-25, 77 P.3d at 151; <u>Turner v. Halliburton Co.</u>, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

Teamsters asserts that plaintiff has not alleged facts sufficient to establish that it engaged in intentional and malicious conduct. See <u>Teamsters Memorandum</u> (Doc. #8) at 12. For reasons stated

above, the Court overrules defendant's motion on this ground.

#### 4. Civil Conspiracy (Count XI)

Plaintiff asserts that Teamsters conspired with BIMBO to convert his property, interfere with his business relations and expectancies, and misappropriate his trade secrets. See Complaint (Doc. #2) at 46. To state a claim for civil conspiracy, plaintiff must allege (1) two or more entities; (2) an object to be accomplished; (3) a meeting of minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages proximately caused by those acts. See York v. InTrust Bank, N.A., 265 Kan. 271, 293, 962 P.2d 405, 422 (1998).

Teamsters asserts that plaintiff cannot establish the fourth element, i.e. one or more unlawful overt acts. Specifically, Teamsters asserts that because plaintiff has failed to establish a prima facie case for any tortious cause of action, his claim for civil conspiracy fails. See Teamsters Memorandum (Doc. #8) at 13. As discussed, plaintiff has sufficiently alleged underlying claims of conversion, tortious interference with business expectancies, and tortious interference with business relations.[5] The Court overrules defendant's motion on this ground.

### II. BIMBO Motion To Dismiss

Against Bimbo Foods and Bimbo Bakeries, plaintiff asserts claims for conversion (Count I), constructive trust (Count II), unjust enrichment (Count III), tortious interference with a business expectancy (Count IV), tortious interference with business relations (Count V), violation of the KUTSA (Count VIII), specific performance (Count IX), breach of distribution agreement (Count X) and civil conspiracy (Count XI). Bimbo Foods and Bimbo Bakeries seek to dismiss on grounds

---

[5]    Plaintiff also alleges that as part of the alleged conspiracy, BIMBO unlawfully disclosed his trade secrets and wrongfully disclosed such information to Teamsters and union drivers. See Complaint (Doc. #2) at 24-25, 46.

that (1) federal law preempts the claims; and (2) plaintiff has failed to state plausible claims for relief. In addition, they assert that plaintiff lacks standing and that plaintiff's allegations fail to distinguish between the conduct of Bimbo Foods and the conduct of Bimbo Bakeries.

### A. Standing

Bimbo Foods and Bimbo Bakeries assert that plaintiff has assigned all of his rights and obligations under the Distribution Agreement to JD Distribution LLC and therefore lacks standing to assert the claims in this case. See Memorandum Of Law Of Defendant Bimbo Bakeries U.S.A., Inc. And Bimbo Foods Bakeries Distribution LLC's Motion To Compel Arbitration And Dismiss Or Stay Proceedings Pending Arbitration, Or In The Alternative To Dismiss Plaintiff's Complaint ("BIMBO Memorandum") (Doc. #15-1) filed November 19, 2018 at 15-16. In support of their motion, defendants attach a document which they contend shows that in 2016, plaintiff assigned JD Distribution all of his rights and obligations under the Distribution Agreement while remaining personally liable for performance of obligations thereunder.[6] See id. at 4 and Exhibit 1 thereto.

As an initial matter, the Court declines to consider documents outside the pleadings.[7] See

---

[6]     According to the document, plaintiff requested the assignment to reflect a change in his business name, in that he wanted to take advantage of doing business under a company form. See Exhibit 1 to Bimbo Memorandum (Doc. #15-1).

[7]     Bimbo Foods and Bimbo Bakeries assert that the Court can consider the assignment without converting their motion to one for summary judgment because it is "effectively" part of the Distribution Agreement which is attached to plaintiff's complaint and central to his claims. See BIMBO Memorandum (Doc. #15-1) at 4-5 n.5. The Court disagrees. Unlike the cases which defendants cite, in this case, the complaint does not refer to the document which defendants seek to introduce. Cf. GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (when complaint refers to document which is central to plaintiff's claim, defendant may submit indisputably authentic copy for consideration on motion to dismiss); Taylor v. Prince, No. 18-2053-KHV, 2018 WL 2722511, at *2 n.4 (D. Kan. June 6, 2018); Cooper Marketing Consulting LLC v. Gerson Co., No. 17-2347-DDC-GLR, 2018 WL 276765, at *4 (D. Kan. Jan. 3, 2018). Moreover, defendants provide no evidence to authenticate the document.

<u>Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202</u>, 475 F. Supp.2d 1092, 1097 n.3 (D. Kan. 2007). Moreover, defendants provide no argument or analysis regarding whether the alleged assignment would preclude all – or only some – of plaintiff's claims. Defendants assert that the "contract claims, and the like" belong only to JD Distribution. <u>BIMBO Memorandum</u> (Doc. #15-1) at 16. Defendants also assert that plaintiff "cannot claim a conversion of routes and distribution rights, when the routes are defined by the Distribution Agreement, and the Distribution Agreement has been assigned to JD Distribution." <u>Id.</u> While it appears that plaintiff does not dispute the fact of the assignment,[8] the record is not sufficiently developed for the Court to determine as a matter of law what affect, if any, it has on plaintiff's standing to assert the claims in this case. The Court overrules defendants' motion on this ground.

> **B.**  **Allegations Regarding Conduct Of Bimbo Foods Bakeries Distribution, LLC Versus Conduct Of Bimbo Bakeries USA, Inc.**

Defendants assert that plaintiff's allegations do not sufficiently distinguish between the conduct of Bimbo Foods and Bimbo Bakeries. <u>See</u> <u>BIMBO Memorandum</u> (Doc. #15-1) at 21. In the complaint, plaintiff alleges that Bimbo Foods and Bimbo Bakeries are both Delaware limited liability companies with their principal place of business at the same address in Horsham, Pennsylvania. <u>See</u> <u>Complaint</u> (Doc. #2) ¶¶ 2, 4. Thereafter, the complaint refers to the two companies collectively as "BIMBO." <u>See</u> <u>id.</u> at 2- Plaintiff asserts that the allegations are attributable to both companies and that he cannot plead with additional particularity because

---

[8]    Plaintiff asserts that "if necessary, [he] will join or substitute JD Distribution LLC inasmuch as necessary to assert the claims alleged in the Complaint." <u>Plaintiff's Response To Defendant Bimbo Bakeries, U.S.A., Inc. And Bimbo Foods Bakeries Distribution LLC's Motion To Dismiss</u> (Doc. #18) filed December 10, 2018 at 31. The Court notes that the magistrate judge has not yet entered a scheduling order in the case. Plaintiff will presumably have an opportunity to evaluate his claims and request to amend the complaint to add or substitute parties, if necessary.

defendants maintain exclusive control of additional facts.  See Plaintiff's Response (Doc. #18) at 20.

Under Twombly, the nature and specificity of the allegations required to state a plausible claim will vary based on context.  See Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1215 (10th Cir. 2011) (citing Smith v. United States, 561 F.3d 1090, 1104 (10th Cir. 2009)).  The standard may have "greater bite" in the context of claims under 42 U.S.C. § 1983, which typically include complex claims against multiple defendants where it is particularly important to make clear exactly "*who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her."  Kansas Penn Gaming, 656 F.3d at 1215 (quoting Robbins v. Okla. ex rel. Dep't of Human Servs., 519 F.3d 1242, 1250 (10th Cir. 2011)) (emphasis in original).  Here, the Court finds that plaintiff has alleged facts which plausibly suggest that both companies may be liable for the alleged misconduct.  See, e.g., Old Republic Title, Ltd. v. Kelley, No. C10-0038JLR, 2010 WL 4259599, at *4 (W.D. Wash. Oct. 22, 2010).  Moreover, on the facts of this case, the companies are in the best position to determine which conduct is attributable to each of them.[9]  The Court overrules defendants' motion on this ground.

### C.    Federal Preemption

BIMBO asserts that federal law preempts plaintiff's claims.  Specifically, BIMBO asserts that Section 8(e) of the NLRA and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempt the claims.[10]  For substantially the same reasons stated by Judge Robinson, as set

---

[9]    The Court notes that throughout the memorandum in support of their motion to dismiss, defendants refer to themselves collectively as "the Bakery."  See BIMBO Memorandum (Doc. #15-1) at 1 n.1, 2-3, 5-6, 9, 13, 15, 17, 19-26, 28-29.

[10]    Section 185 states, in part, as follows:

(continued...)

forth above, the Court overrules defendants' motion on this ground.  See Butcher, 2018 WL 6200027, at **5-8.

**D.** **Claims For Relief**

BIMBO asserts that plaintiff has failed to state plausible claims for relief.  Specifically, BIMBO asserts that plaintiff has failed to allege facts sufficient to support claims for conversion (Count I), constructive trust (Count II), unjust enrichment (Count III), tortious interference with a business expectancy (Count IV), tortious interference with business relations (Count V), violation of KUTSA (Count VIII) and civil conspiracy (Count XI).[11]  In addition, defendants assert that the

---

[10](...continued)
**(a) Venue, amount, and citizenship**

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**(b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments**

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.
* * *

29 U.S.C. § 185 (emphasis in original).

[11]     Defendants do not challenge the sufficiency of plaintiff's allegations regarding specific performance (Count IX) and breach of distribution agreement (Count X).

-16-

economic loss doctrine bars the claims sounding in tort.

### 1. Conversion (Count I)

Defendants assert that plaintiff has not alleged a plausible claim for conversion. See BIMBO Memorandum (Doc. #15-1) at 28-29. Specifically, defendants assert that because the conversion claim is based on intangible rights arising under the Distribution Agreement, i.e. plaintiff's route, customer lists and customer data, and Texas law governs the Distribution Agreement,[12] Texas law applies to the conversion claim. See id. Defendants further assert that Texas law does not recognize a cause of action for conversion of intangible property rights. See id.

On this record, defendants have not shown that Texas law applies to the conversion claim. By its terms, the choice-of-law provision in the Distribution Agreement applies only to claims involving the "validity, interpretation and performance" of the Agreement. Distribution Agreement § 12.8, Exhibit A to Complaint (Doc. #2). Defendants provide no analysis or legal authority to support their assertion that under this provision, Texas law governs the conversion claim. Kansas courts apply the doctrine of *lex loci delecti*, i.e. the site of the injury determines the governing law. See Ling v. Jan's Liquors, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). Here, the alleged injury occurred in Kansas. Thus, Kansas law would govern the conversion claim. See id. As discussed, Kansas law recognizes a claim for conversion of intangible property rights. See Butcher, 2018 WL 6200027, at *8 (citing Crivello, 673 F. Supp. 2d at 1281) (further citations omitted). The Court overrules defendants' motion on this ground.

---

[12]     The Distribution Agreement states that "[t]he validity, interpretation and performance of this Agreement is controlled by and construed in accordance with the laws of the State of Texas, without regard to its choice of law provisions." Distribution Agreement § 12.8, Exhibit A to Complaint (Doc. #2).

## 2. Constructive Trust (Count II)

Defendants assert that plaintiff has failed to state a plausible claim for constructive trust. Specifically, defendants assert that plaintiff bases the claim on breach of a fiduciary duty but has not alleged facts sufficient to show that they owed him any fiduciary duties. See BIMBO Memorandum (Doc. #15-1) at 23-24. Under Kansas law, "the imposition of a constructive trust is a remedial device designed to prevent unjust enrichment by one who has an equitable duty to convey property to whom the property justly belongs." Nelson v. Nelson, 288 Kan. 570, 589, 205 P.3d 715, 729 (2009). The remedy does not require an underlying claim of fraud or breach of fiduciary duty. See id. Here, plaintiff alleges that defendants have wrongfully converted and/or taken his property. See Complaint ¶¶ 108-111, 116, 118. These allegations are sufficient to state a claim for constructive trust under Kansas law. See Nelson, 288 Kan. at 589-90, 205 P.3d at 729. The Court overrules defendants' motion on this ground.

## 3. Unjust Enrichment (Count III)

Defendants assert that plaintiff has failed to state a plausible claim for unjust enrichment. Specifically, defendants assert that the claim fails because it relates solely to conduct arising out of the Distribution Agreement. See BIMBO Memorandum (Doc. #15-1) at 27. In other words, defendants assert that because plaintiff's claim rests on an express valid contract, quasi-contractual remedies such as unjust enrichment are not available. See id.

Under Kansas law, when an enforceable express contract governs the relations of the parties with respect to the issues in dispute, quasi-contractual remedies such as unjust enrichment are not available.[13] See Ice Corp. v. Hamilton Sundstrand Inc., 444 F. Supp.2d 1165, 1170 (D. Kan. 2006).

_____

[13] The elements of an unjust enrichment claim are that (1) plaintiff conferred a benefit
(continued...)

To preclude a claim of unjust enrichment, however, the contract must address the issue in dispute. See Hendrick v. Moresco, No. 116,927, 2017 WL 3113221, at *4 (Kan. App. July 21, 2017). Here, plaintiff asserts that the Distribution Agreement does not address the conversion and inequitable receipt of the benefits of his route. See Plaintiff's Response To Defendant Bimbo Bakeries U.S.A., Inc. And Bimbo Foods Bakeries Distribution LLC's Motion To Dismiss (Doc. #18) filed December 10, 2018 at 26. The record is not fully developed in this regard. Moreover, at this stage in the proceedings, the record is not clear whether both Bimbo Foods and Bimbo Bakeries are parties to the Distribution Agreement. It is plausible that one of them may be a party to the Agreement while the other may be liable for unjust enrichment. On this record, defendants have not shown that plaintiff cannot prevail on the unjust enrichment claim.

### 4. Tortious Interference With Business Expectancy And Business Relations (Counts IV and V)

Defendants assert that plaintiff has failed to state plausible claims for tortious interference with a business expectancy and tortious interference with business relations.[14]

---

[13](...continued)
on defendant; (2) defendant appreciated or acknowledged the benefit; and (3) under the circumstances, it would be inequitable to allow defendant to retain the benefit without paying for its value. See Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd., 259 Kan. 166, 177, 910 P.2d 839, 847 (1996).

[14] As discussed, to state a claim for tortious interference with a business expectancy, plaintiff must allege (1) the existence of a business relationship or expectancy with the probability of future economic benefit to plaintiff; (2) that defendant had knowledge of the business relationship or expectancy; (3) that, except for the conduct of defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) that plaintiff suffered damages as a direct or proximate cause of defendant's misconduct. See Burcham, 276 Kan. at 424, 77 P.3d at 151. To state a claim for tortious interference with business relations, plaintiff must allege (1) the existence of a contract or business relationship; (2) defendant's knowledge thereof; (3) defendant's intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. See Cohen, 296 Kan. at 546, 293 P.3d at 755;
(continued...)

See BIMBO Memorandum (Doc. #15-1) at 26.  Specifically, defendants assert that the claims fail because plaintiff has not alleged that they communicated with any third parties.  See BIMBO Memorandum (Doc. #15-1) at 26.  This argument ignores plaintiff's assertions that BIMBO conspired with Teamsters to have union drivers take over plaintiff's routes.

Defendants assert that the tortious interference claims fail because the Distribution Agreement created the alleged business expectancy.  Defendants assert that because "the Bakery" is a party to the Distribution Agreement, plaintiff cannot assert a tortious interference claim against them.  Id.  Defendants cite no authority to support their argument.  See id.  Moreover, as noted, defendants do not define whether their reference to "the Bakery" refers to Bimbo Foods, Bimbo Bakeries, or both.  On this record, defendants have not shown that plaintiff cannot prevail on the tortious interference claims.  The Court overrules defendants' motion on this ground.

### 5.    KUTSA (Count VI)

Defendants assert that plaintiff has failed to allege facts sufficient to state claim a claim under KUTSA.  To state a claim for misappropriation of a trade secret under KUTSA, plaintiff must allege that (1) he had possession of a valid trade secret, (2) defendant disclosed or used the trade secret without his consent and (3) defendant knew or should have known that the trade secret was acquired by improper means.  See API Americas Inc. v. Miller, 2:17-cv-02617-HLT, 2019 WL 1506955, at *5 (D. Kan. April 5, 2019); Chris-Leef Gen. Agency, Inc. v. Rising Star Ins. Inc., No. 11-cv-2409-JAR, 2011 WL 5039141, at *4 (D. Kan. 2011); see also K.S.A. § 60-3320.[15]

---

[14](...continued)
Burcham, 276 Kan. at 423, 77 P.3d at 150.

[15]    Section 60-3320 defines the term "misappropriation" as follows:

(continued...)

Plaintiff alleges that defendants misappropriated trade secrets which included his customer lists, customer data, and/or information which plaintiff exclusively possessed regarding customer business needs and operations and/or methods for servicing customer needs and wishes.  See Complaint (Doc. #2) ¶ 162.  Plaintiff alleges that such items "were and continue to be subject to reasonable efforts to maintain their secrecy and confidentiality" and that they derive "independent economic value from their not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain their economic value from their disclosure."  Id.

Defendants assert that plaintiff has not sufficiently alleged a protectable trade secret.  See BIMBO Memorandum (Doc. #15-1) at 22.  Specifically, defendants assert that customer lists

---

[15](...continued)
"Misappropriation" means:

(i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii) disclosure or use of a trade secret of another without express or implied consent by a person who

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

(I) derived from or through a person who had utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; * * *

K.S.A. § 60-3320(2).

may constitute protectable trade secrets only when plaintiff "expends a great deal of time, effort and expense in developing the lists and treats the lists as confidential in its business." BIMBO Memorandum (Doc. #15-1) at 22 (quoting Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc., 86 F. Supp.2d 1102, 1106 (D. Kan. 2000)). Defendants assert that plaintiff has not alleged facts sufficient to show that the customer lists were compiled from information not readily available to the public or that he took steps to keep the customer lists secret. See BIMBO Memorandum (Doc. #15-1) at 22.

At this juncture, considering the record as a whole and accepting as true plaintiff's allegations, plaintiff has alleged facts sufficient to support the conclusion that the customer lists constitute protected trade secrets. As noted, the Distribution Agreement states that it may provide the distributor access to confidential information which constitutes valuable trade secrets which the distributor may not disclose to third parties. Distribution Agreement § 6.1. Moreover, defendants do not address plaintiff's allegations regarding misappropriation of trade secrets involving his customers' business needs and operations and/or methods for servicing his customers' needs and wishes.

Defendants assert that plaintiff has failed to identify how they obtained, used or misappropriated the alleged secrets. See BIMBO Memorandum (Doc. #15-1) at 23. The Court disagrees. Considering the record as a whole and accepting as true plaintiff's allegations, plaintiff alleges facts which plausibly suggest that defendants had access to trade secrets and wrongfully disclosed them to Teamsters and/or union drivers. The Court overrules defendants' motion on this ground.

### 6.    Civil Conspiracy (Count XI)

Defendants assert that plaintiff has failed to allege a plausible claims for civil conspiracy because he has not sufficiently alleged a valid underlying tort. For reasons previously discussed, the Court overrules defendants' motion on this ground.

### 7.    Economic Loss Doctrine (Counts I, II, IV and VI)

Defendants assert that the economic loss doctrine bars plaintiff's tort claims, i.e. conversion (Count I), constructive trust (Count II), tortious interference with a business expectancy (Count IV) and tortious interference with business relations (Count V).[16] See BIMBO Memorandum (Doc. #15-1) at 24-25. Specifically, defendants assert that under Kansas law, plaintiff cannot recover economic losses resulting from their alleged failure to perform under the Distribution Agreement. See id. at 25.

The doctrine arose in the context of product liability litigation, because courts were "concerned that the rise of implied warranties and strict liability for dangerous products would allow tort law to consume contract law." Rinehart v. Morton Bldgs., Inc., 297 Kan. 926, 932, 305 P.3d 622, 627 (2013). In Rinehart, the Kansas Supreme Court noted that many jurisdictions have embraced the doctrine and extended its application beyond the commercial product liability sphere, "[b]ut determining when the doctrine is appropriately applied outside the product liability sphere has proven difficult, and there is some sense the doctrine's application has expanded too far." Id., 297 Kan. at 934, 305 P.3d at 629. The Kansas Supreme Court noted that the scope of the economic doctrine "is still unfolding," id., and has refused to apply the doctrine to all claims. See Rinehart,

_____

[16]    The heading in defendants' brief mistakenly asserts that the economic doctrine bars Counts I, VI, V and VIII, but its argument addresses Counts I, II, VI and V. See BIMBO Memorandum (Doc. #15-1) at 24-25.

297 Kan. at 936-41, 305 P.3d at 630-33 (economic loss doctrine no bar to negligent misrepresentation claim); David v. Hett, 293 Kan. 679, 701-02, 270 P.3d 1102, 1114-15 (2011) (economic loss doctrine no bar to homeowners' claim for negligently performed construction services). Instead, the Kansas Supreme Court uses the following test to decide whether a claim arises in tort or contract:

> Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. [Citations omitted.] A breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of duty imposed by law, independent of the contract. [Citation omitted.] But the fact that the parties have a contractual relationship does not necessarily control the inquiry because legal duties may arise even though the parties also have a contract, so that ' "[w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of circumstances surrounding or attending the transaction, the breach of the duty is a tort. [Citations omitted.]"

Rinehart, 297 Kan. at 936, 305 P.3d at 629 (quoting David, 293 Kan. at 701, 270 P.3d at 1114-15).

Here, plaintiff asserts that the tort claims arise from independent duties imposed by law, not a failure to meet obligations arising from the Distribution Agreement. See Plaintiff's Response (Doc. #18) at 23-24. Defendants provide little to no analysis in this regard. See BIMBO Memorandum (Doc. #15-1) at 25. Defendants do not discuss the elements of the tort claims; they merely assert that "[e]ach of these claims necessarily depends on an analysis of Plaintiff's rights under the Distribution Agreement" and "are therefore dependent on the elements of Plaintiff's contract claims and must be dismissed pursuant to the economic loss doctrine." Id. On this record, defendants have not shown that as a matter of law, the economic loss doctrine bars plaintiff's claims of conversion, constructive trust, tortious interference with a business expectancy and tortious interference with business relations. The Court overrules defendants' motion on this ground.

**IT IS THEREFORE ORDERED** that Defendant International Brotherhood Of Teamsters Local Union No. 955 Motion To Dismiss (Doc. #7) filed September 13, 2018 is **OVERRULED**.

**IT IS FURTHER ORDERED** that and Defendant Bimbo Bakeries U.S.A., Inc. And Bimbo Foods Bakeries Distribution LLC's Motion To Compel Arbitration And Dismiss Or Stay Proceedings Pending Arbitration, Or In The Alternative To Dismiss Plaintiff's Complaint (Doc. #15) filed November 29, 2018 is **OVERRULED**.

Dated this 23rd day of May, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge